UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

VICKIE L LEVESQUE,          )
                            )
    Plaintiff        )
                            )
v.                          )     No. 1:13-CV-00128-GZS
                            )
SOCIAL SECURITY ADMINISTRATION )
COMMISSIONER,               )
                            )
    Defendant        )

## REPORT AND RECOMMENDED DECISION

After a hearing on Plaintiff's application for disability insurance benefits under Title II and Title XVI of the Social Security Act, Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff Vickie Levesque has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits.

Following a review of the record, and after consideration of the parties' written and oral arguments, as explained below, the recommendation is that the Court reverse and remand the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Acting Commissioner's final decision is the January 26, 2012, decision of the Administrative Law Judge. The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920, and was rendered in the context of a prior remand by the Disability Review Board. (ALJ Decision at 1, PageID #40.)

At step 1 of the sequential evaluation process, the ALJ found that Plaintiff meets the insured

status requirements of Title II through December 31, 2012, and that Plaintiff has not engaged in substantial gainful activity from December 11, 2007, the date of alleged onset of disability. (*Id.*, Findings and Conclusions, ¶¶ 1, 2.) In the second stage of the analysis, the ALJ concluded that Plaintiff has the following severe physical/mental impairments: cervical degenerative disk disease, lumbar degenerative disk disease, and affective disorder. (*Id.* ¶ 3.) On step 3, the ALJ determined that the combination of impairments would not meet or equal any listing in the Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. The ALJ found Plaintiff's mental impairments impose mild limitations in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, and pace. The ALJ also observed that the Plaintiff experienced no episodes of decompensation of extended duration. (*Id.* ¶ 4.)

Prior to further evaluation at steps 4 and 5, the ALJ assessed Plaintiff's residual functional capacity. The ALJ determined that Plaintiff has the residual functional capacity for light work, with a lift restriction of 20 pounds occasionally and 10 pounds frequently. Additionally, according to the ALJ's findings, Plaintiff was able to stand and/or walk for six hours in an eight hour workday, sit for six hours in an eight hour workday, and engage in occasional pushing and pulling of no more than 10 pounds. As to more specific activities, hazards, irregular or sloping surfaces, tasks requiring hyperextension of the neck, crawling, and climbing ropes, ladders and scaffolds are all excluded. The ALJ concluded that Plaintiff could do the following only on an occasional basis: stairs, ramps, balancing, kneeling, crouching, and overhead work.

In terms of the mental demands of the workplace, the ALJ determined that Plaintiff is capable of understanding, remembering, and carrying out simple instructions, using judgment to make simple work-related decisions, responding appropriately to co-workers, supervisors, and

usual work settings, and adapting to changes in the ordinary work setting. (*Id.* ¶ 5.) At step 4, the ALJ found that with the degree of limitation assessed, Plaintiff could not perform past relevant work, including work as a cashier II, food tester, and agricultural worker. (*Id.* ¶ 6.)

In the final inquiry at step 5, the ALJ found and the record establishes that Plaintiff was born in 1965, making her a younger individual as of the alleged onset date. (*Id.* ¶ 7.) Plaintiff has a high school education and can communicate in English. (*Id.* ¶ 8.) Because the Medical-Vocational Guidelines for step 5 suggest that Plaintiff is "not disabled" regardless of the presence of transferable job skills, the ALJ found that the existence of transferable job skills was immaterial to the step 5 inquiry. (*Id.* ¶ 9.) When presented with Plaintiff's vocational profile and the residual functional capacity findings, a vocational expert concluded that Plaintiff's limitations do not significantly erode the sedentary occupational base. (*Id.* ¶ 10.) Based on the vocational expert's testimony, the ALJ found that Plaintiff could perform the job of parking lot attendant. (*Id.*) The ALJ, therefore, concluded that Plaintiff has not been under a disability from December 11, 2007, through the date of decision. (*Id.* ¶ 11.)

## PLAINTIFF'S STATEMENT OF ERRORS

### A. Standard of Review

The Court must affirm the administrative decision so long as it applies the correct legal standards and is supported by substantial evidence. This is so even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial

evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## B. Discussion

Plaintiff argues that the ALJ erred in his residual functional capacity (RFC) finding by failing to account for Plaintiff's moderate limitations in her ability both to meet the social expectations of the workplace and to meet the concentration, persistence, and pace demands of substantial gainful employment activity. (Statement of Errors at 2-5.) Plaintiff further contends that the social limitation and other recognized limitations cannot be reconciled with the occupation of a parking lot attendant. (*Id.* at 5-7.) Finally, Plaintiff maintains the ALJ's findings concerning her subjective experience of pain in the upper extremities are inconsistent, and that the ALJ's conclusion that the record does not establish that Plaintiff suffers from severe shoulder impairment and severe upper extremity impairment is not supported by substantial evidence. (*Id.* at 7-10.)

### 1. *ALJ's treatment of upper extremities symptoms at step 2*

The ALJ determined that Plaintiff's subjective symptoms of upper extremity pain and numbness are best understood as the product of radiculopathy related to Plaintiff's cervical degenerative disk disease, and that severe musculoskeletal impairment of an upper extremity was not medically established as a cause of her symptoms. (ALJ Decision at 7-8, 15, PageID # 46-47, 54.) In reaching this conclusion, the ALJ relied on the testimony of Dr. Webber, and the findings by Orthopedists Dr. Rice (Ex. 16F) and Dr. Long (Ex. 25F), and Plaintiff's primary care provider Dr. Fowler (Ex. 26F). (*Id.*)

In her Statement of Errors, Plaintiff argues that the ALJ erred by finding "no medically determinable impairments that reasonably could be expected to cause arm and hand pains." (Statement of Errors at 7, citing ALJ Decision at 15 (fourth paragraph).) Plaintiff challenges this

4

characterization of the record and asserts that a distinct shoulder impairment is well-diagnosed. (*Id.* at 8-9.)

In his finding regarding the shoulder impairment issue, the ALJ, while concluding that Plaintiff does not suffer from a severe, independent shoulder impairment, wrote that he "does not rule out the degenerative disease in the neck as a source of symptoms and limitations" in the upper extremities. (ALJ Decision at 14 (last paragraph).) The ALJ, however, observed that the record suggests at most periodic and variable degrees of axial pain rather than "mechanical abnormalities or constant pain that limited motion absolutely." (*Id.* at 15.) As part of that analysis, the ALJ noted the prescribed treatment modalities for pain management, that Plaintiff's daily activities "do not support the alleged degree of severity of her pain symptoms," the absence of deformities or limitations in the joints of the upper extremities, the lack of evidence of an impairment causing "radicular-type neuromuscular pain," and the negative electrodiagnostic testing by Dr. Tungol (Ex 20F). (*Id.*) Despite these observations, the ALJ imposed a push-pull weight restriction bilaterally, based on the presence of degenerative disk disease and based on Dr. Webber's endorsement of such a functional limitation for the upper extremities. (*Id.* at 17.)

While Plaintiff cites evidence that she contends contradicts the ALJ's findings,[1] the fact that the record contains conflicting evidence is not dispositive. The question is whether the ALJ's determination is supported by substantial evidence on the record. Here, the evidence upon which the ALJ relied, which evidence includes Dr. Webber's testimony, supports the ALJ's conclusion that axial pain is a product of cervical degenerative disk disease and that an independent shoulder

---

[1] Plaintiff points to the cervical spine MRI report (Ex. 14F/5-6), evidence of tenderness and spasm of the dorsal border of the trapezius bilaterally (Exs. 15F/2, 18F/2), "positive impingement signs with range of motion of the right shoulder" (Ex. 18F/7), Dr. Herland's finding that Plaintiff's primary pain concern is in her right shoulder, with exquisite pain in the right shoulder and a modest degree of right bicep pain resulting from a "speed test" (Ex. 10F/2), Dr. Rice's records reflecting mostly right-sided trapezius pain with occasional arm pain (subjective) and finding of normal range of motion, normal reflex and motor assessment, but pain in the trapezial musculature (objective) (Ex. 16F/1), and Dr. Long's examination finding of "a slight decreased sensation on the left upper extremity" (Ex. 25F/3).

5

pathology is not medically established. In addition, the record does not compel an independent restriction related to arm and hand dysfunction arising from regular axial pain. The evidence supports the conclusion that any deficit can fairly be characterized as temporary. In particular, after reviewing Plaintiff's medical records, Dr. Webber testified that the record reflected "*temporary* paresthesia" from temporary pressure on a nerve root in relation to bilateral arm symptoms. (Hr'g Tr. at 31, PageID # 99.)

Although the evidence suggests that Plaintiff's cervical disk disease produces shoulder pain and trapezius pain, particularly on the right side, which pain could implicate Plaintiff's vocational ability, the ALJ's allowance of a push-pull restriction for RFC purposes represents a reasonable interpretation of the vocational implications of these pain symptoms, particularly given Dr. Webber's testimony that the pain symptoms are subjective (*Id.* at 47, PageID # 115), and Dr. Tungol's finding of a "normal" electrodiagnostic study showing no evidence of entrapment neuropathy, peripheral neuropathy, radiculopathy or any myopathy (Ex. 20F/2).

## 2. *ALJ's omission of a social restriction*

Plaintiff asserts error in the ALJ's failure to include a social restriction in the RFC finding. (Statement of Errors at 2.) Plaintiff contends that a social restriction was required because the Disability Review Board previously remanded Plaintiff's claims for additional proceedings based on the ALJ's failure to incorporate a restriction against interaction with the public when he addressed the vocational expert, despite finding that such a restriction existed in the RFC findings. (*Id.*) Defendant maintains that the prior RFC findings are irrelevant because the ALJ's prior decision was vacated. Defendant, therefore, argues that the ALJ is free to revisit the issue and to rely on the mental RFC assessment provided by David Houston Ph.D. (Ex. 9F).[2] (Opposition at

---

[2] Dr. Houston's mental RFC assessment was part of the record the ALJ considered prior to the Decision Review Board remand.

5.)

The ALJ found that Plaintiff suffers a severe affective disorder and that she is moderately limited in social functioning, noting difficulties with anger. The ALJ nevertheless placed great emphasis on Dr. Quinn's finding that Plaintiff displayed adequate social skills during Dr. Quinn's consultative examination (Ex. 7F). (ALJ Decision at 12.) In addition, in assessing Plaintiff's RFC, the ALJ adopted without qualification the findings of David Houston, Ph.D. (Ex. 9F). Dr. Houston concluded that Plaintiff has "adequate social skills," and is able "to interact appropriately with co-workers and supervisors." Dr. Houston, however, did not make a finding regarding Plaintiff's ability to interact appropriately with the general public. (PageID # 498, ¶ C.)

Plaintiff argues that the omission of the public social limitation is a material error because the ALJ ultimately determined that Plaintiff was not disabled based on a vocational expert's testimony that Plaintiff would be able to perform the job of parking lot attendant. (Statement of Errors at 3-4.) Defendant contends that Dr. Houston's findings, upon which the ALJ relied, support the ALJ's ultimate conclusion. Defendant also maintains that the failure to include a public social limitation in the RFC is not material because Plaintiff cannot point to any expert opinion evidence that actually calls for a restriction against interaction with the public.

Defendant's arguments in support of the ALJ's omission of a public-interaction restriction are not persuasive. A claimant's residual functional capacity is "the most [she or he] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). As such, an RFC finding recites "the individual's *maximum* remaining ability." Social Security Ruling 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, at *2 (S.S.A. July 2, 1996) (emphasis in original). In light of this basic principle of RFC construction, Dr. Houston's RFC assessment does not support a finding that Plaintiff can interact appropriately with the general

7

public. To the contrary, on the topic of social interaction, Dr. Houston stated: "[Claimant] is able to interact appropriately with co-workers and supervisors." (Ex. 9F/3.) Given Dr. Houston's obvious familiarity with the standard for assessing social security disability, the fact that he did not include a public interaction component cannot be considered inadvertent. Dr. Houston's RFC assessment (*i.e.*, his determination of "the most" Plaintiff can do) is limited to appropriate interaction with co-workers and supervisors. In essence, therefore, Dr. Houston's finding supports Plaintiff's contention that she lacks the capacity to tolerate public interaction. This finding is consistent with Plaintiff's overall medical profile. The ALJ's finding, therefore, that Plaintiff can interact appropriately with the general public was error. The issue is whether the error is harmless.

3.    *Reliability of the vocational expert's testimony*

At step 5 of the evaluation process, the burden shifts to the Acting Commissioner to establish that jobs exist in the national economy in significant numbers that the claimant could perform, giving particular attention to the claimant's age, education, work experience, and residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1), 416.920(a)(4)(v), (g)(1); *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 7 (1st Cir. 1982). This burden is generally addressed through a combined reliance on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and the testimony of a vocational expert. *Goodermote*, 690 F.2d at 7.

In this case, the ALJ found Plaintiff not disabled at this stage, and relied on the testimony of a vocational expert to sustain the burden of proof. Because the hypothetical that the ALJ presented to the vocational expert omitted a restriction on public interaction, Plaintiff contends that the vocational expert's testimony is an unreliable indicator that there is work in the national economy that Plaintiff could perform. (Statement of Errors at 5.) The ALJ's finding that Plaintiff could perform a job of a parking lot attendant – the only job cited by the ALJ – demonstrates the

significance of the public interaction issue. As a parking lot attendant, Plaintiff's interaction with the public would be inevitable. Accordingly, the ALJ's failure to find and consider Plaintiff's inability to interact with the public is not harmless.

Defendant argues that the ALJ's identification of the parking lot attendant job was a "scrivener's error" and that the salient job identified by the vocational expert that the ALJ meant to identify is the job of call out operator. (Opposition at 7-8.) Defendant asks that the Court review the ALJ's decision based on Plaintiff's ability to work as a call out operator, because "the hearing transcript makes it clear." (*Id.* at 7.)

A review of the vocational expert's testimony reflects that the vocational expert initially proposed the job of call-out operator, DOT # 237.367-014, in response to an RFC hypothetical that aligns with the ALJ's RFC finding. (PageID # 117-118.) Defendant argues that the Court should review the ALJ decision in this context despite the fact that the ALJ did not specifically rely on this testimony. Even if the Court were to assess the ALJ's finding of "not disabled" as based on Plaintiff's ability to work as a call-out operator, substantial evidence does not support the ALJ's decision insofar as the record lacks evidence to support a determination that the job would not require significant public interaction.

## 4. *The framework finding*

At oral argument, Defendant argued that Plaintiff is fairly deemed not disabled based on the "framework" of the Medical-Vocational Guidelines, citing *Garcia-Martinez v. Barnhart*, 111 Fed. App'x 22 (1st Cir. 2004) (per curiam).[3] Defendant's "framework" argument is unpersuasive.

In *Garcia*, where the claimant alleged only mental impairment, the claimant's RFC was

---

[3] Because this argument was first raised at the March 13, 2014, oral argument, the Court granted Plaintiff the opportunity to address this issue in writing. Plaintiff filed a supplemental brief (ECF No. 21) and Defendant filed a supplemental response (ECF No. 22).

determined to allow routine, repetitive work that did not involve undue pressure and public interaction. *Id.* at 23. The Court of Appeals held that in light of this particular RFC, the ALJ appropriately relied on the Guidelines to find the claimant not disabled. *Id.* Plaintiff's case is distinguishable. Plaintiff's RFC limits her to sedentary or light work. By comparison, the *Garcia* claimant had the capacity to work at every exertional level. Plaintiff's RFC also includes several additional limitations that distinguish Plaintiff's situation from the facts of *Garcia*. Plaintiff's limitations include a six-hour restriction on sitting/ standing/walking, a push/pull restriction on the upper extremities, multiple postural limitations, a reaching/manipulative limitation, and an environmental limitation. The facts of this case, therefore, are not similar to those of *Garcia*.

Defendant nevertheless argues that *Garcia* supports the proposition that a restriction against public interaction "does not *significantly* erode the unskilled occupational base at *any* exertional level." (Def.'s Supplement at 3.) *Garcia* does not support such a broad statement. Contrary to Defendant's argument, *Garcia* holds only that "where … a claimant's non-exertional impairment does not significantly interfere with the *performance of the full range* of unskilled work, the use of the grid as a framework is not error. *Garcia*, 111 Fed. App'x at 23 (emphasis added). Here, because of Plaintiff's recognized limitations, Plaintiff's RFC precludes the full range of unskilled work. *Garcia* thus does not compel a different conclusion.

Defendant also argues that the vocational expert testified that the ALJ's hypothetical RFC would not substantially erode the sedentary work base. (Def.'s Supplement at 2-3, citing Tr. at 89.) A review of the transcript reveals that the vocational expert testified that he did not "think" the sedentary work base would be significantly eroded by Plaintiff's manipulative, environmental, and postural restrictions, combined with a limitation to "simple" work. (PageID # 118.) As noted above, however, the ALJ's failure to include reference to a public interaction restriction in his

10

question to the vocational expert constitutes a critical omission.  Simply stated, Defendant cannot successfully rely on the vocational expert's testimony to support the ALJ's decision that Plaintiff is not disabled.

## CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court reverse Defendant's final administrative decision and remand Plaintiff's Title II and Title XVI claims for further proceedings.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

April 7, 2014